UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-80716-CIV-MIDDLEBROOKS

| | |
|---|---|
| LIDES ARNALDO SOTO, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| HALO POLO LLC | ) |
| MELISSA GANZI | ) |
| MARC GANZI, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, through undersigned counsel, and responds as follows:

1.  This matter sounds under the Fair Labor Standards Act ("FLSA") regarding failure to pay legally mandated wages.

2.  Defendant's Summary Judgment [DE 24] should be denied as set forth below, as the agricultural exemption in all its forms is not applicable in this case and Defendants are not entitled to the affirmative defense of the cost credit as the defense was waived and the defense is deficient.

**MEMORANDUM OF LAW**

**A.  SUMMARY JUDGMENT STANDARD.**

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied*

*Corp.*, *et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d at 1383.  *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact…."). Here, there are genuine issues of fact regarding the all the relevant claims of Defendants' Summary Judgment Motion.

**B.    THE AGRICULTURAL EXEMPTION IS NOT APPLICABLE IN THE CURRENT CASE**

Defendants primarily rely on the agricultural exemption to state that Plaintiff is not entitled to any overtime wages. The employer carries the burden of proving an exemption, *Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir. 2004), and in determining whether an exemption exists, the overtime provisions of Section 203 are narrowly construed against the employer. *Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800, 804 (11th Cir. 1991); *see also Brennan v. Sugar Cane Growers Co-Op of Fla.*, 486 F.2d 1006 (5th Cir.1973); *see also Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir. 1994). The employer must prove the applicability of an exemption by clear and affirmative evidence. *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001).

### 1.  PRIMARY AGRICULTURE

Defendants contend that Plaintiff's job is primary agriculture under the FLSA. "'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities... the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as incident to or in conjunction with farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." 29 U.S.C. 203(f).

Primary agriculture is defined as any of the activities detailed in 29 U.S.C. 203(f) and an employee employed in these activities is engaged in agriculture regardless of whether he is employed by a farmer or on a farm. 29 C.F.R. 780.105(b). The term "'raising' employed with reference to livestock in section 3(f) includes such operations as the breeding, fattening, feeding, and general care of livestock. Thus, employees **exclusively** engaged in feeding and fattening livestock in stock pens where the livestock remains for a substantial period of time are engaged in the 'raising' of livestock." 29 C.F.R. 780.121. (emphasis added). However, in defining the raising of livestock, "**[t]he feeding and care of livestock does not necessarily or under all circumstances constitute the 'raising' of such livestock**." *Id.* (emphasis added)

Plaintiff's job functions do not fall under the ambit of agriculture as defined by 29 U.S.C. 203(f) or 29 C.F.R. 780.121. Defendants have not cited to anything in the record that states Plaintiff cultivated or tilled soil. Nothing in the record suggests Plaintiff was

involved in dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities. Nothing in the record suggests plaintiff prepared horses for market, delivered horses to storage, to the market, or even carriers for transportation to the market.

Defendants hang their hat exclusively on the argument that Plaintiff was involved in "the raising of livestock." However, Defendants' basis for this is primarily in the functions of Halo Polo LLC itself, rather than the specific job duties of Plaintiff: "Defendant, Halo Polo's business is to breed, raise, train and take care of horses for polo purposes... Halo Polo leases, buys, and sells horses for these purposes, and its main function is to raise and train horses...." Defendants' Motion for Summary Judgment at [DE 24].

When looking at exemptions, the courts will analyze what the individual employee does rather than his job title or the functions of the employer. For example with executive exemptions, an employee's job title is irrelevant in determining whether he or she is exempt under the FLSA. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1075 (1st Cir. 1995). 29 C.F.R. §541.2 expressly states: "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."

The Plaintiff specifically, however, was not engaged in the "raising of livestock." Plaintiff was not involved in the breeding of horses and said horses didn't even fall under Plaintiff's oversight until they reached a certain age for polo training and were moved from a different facility to where Plaintiff worked. See Plaintiff's Statement of Material

Facts in Opposition to Defendants' Motion for Summary Judgment, filed concurrently with this response, at ¶12-13. Plaintiff's duties explicitly consisted of "exercising horses, feeding horses, grooming horses, cleaning stalls, maintaining tack, including bridles and saddles, cleaning the truck and trailer used to transport Halo Polo's horses, providing support at polo matches and bringing horses to the polo fields" as well as "training horses for use in polo" and "warm[ing] the horses up at polo games." Defendants' Statement of Material Facts, previously filed as [DE 25], at ¶17-19. With the exception of feeding the horses, all these activities are explicitly done as part of polo training the horses and engaging the horses in polo games, not the "general care of livestock" under 29 C.F.R. 780.121. The only activity Plaintiff does that may be anticipated as "the raising of livestock" under 29 U.S.C. 203(f) or 29 C.F.R. 780.121 is feeding the horses, however, as per 29 C.F.R. 780.121 simply feeding does not translate to "raising" livestock. [1]

It should also be noted that where an employee performs a mix of exempt and non-exempt work, the employee is fully covered under the statute.

> The simplest answer to Superior's claimed exemption here was that given by this Court in *Hodgson v. Wittenburg*, 464 F.2d 1219 (5th Cir. 1972): "The answer to that lies partly in the rule that an employee's performance of both exempt and non-exempt activities during the same work week defeats any exemption that would otherwise apply." This Court also said in *Brennan v. Six Flags Over Georgia Ltd.*, 474

---

[1] It should also be noted that- while it does include "horses" generally- 29 C.F.R. 780.120 specifically notes that "[t]he meaning of the term livestock' as used in section 3(f) is **confined to the ordinary use of the word** and includes only domestic animals ordinarily raised or used on farms. That Congress did not use this term in its generic sense is supported by the specific enumeration of activities, such as the raising of fur-bearing animals, which would be included in the generic meaning of the word." (emphasis added). It is clear that the inclusion of "horses" is entailed for uses typical of farm livestock, such as a work horse or a pack mule. Sport or performance horses, like a polo horse, which require specific breeding, handling, exercise, and training, would not fall under the ordinary use of the word.

> F.2d 18 (5th Cir. 1973):"Nor does it make any difference that the employee is doing mixed work. In any week that any particular employee does some non-exempt work he is covered fully, not pro rata." Citing *Hodgson, supra*, and *Mitchell v. Hunt*, 263 F.2d 913 (5th Cir. 1959).

*Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 411 (5th Cir. 1975). So even if Plaintiff's feeding of the horses did remotely constitute the "raising of livestock" Plaintiff performed a mix of exempt and non-exempt activities which defeats the claimed exemption. In addition to Plaintiff's job duties, Plaintiff would take trips to and from polo games, both in state and out of state, away from Defendants' locations entirely in order to have the horses participate in polo matches. Defendants' Statement of Material Facts at ¶21. As noted above, Plaintiff would provide support at polo matches, bring horses to the polo field, train the horses in the sport of polo, and warm the horses up for polo games, all of which are not intended under 29 U.S.C. 203(f). Defendants' Statement of Material Facts at ¶17-19. [2]

Plaintiff's care of the horses is more analogous to a race horse than a standard horse on a farm. "One exception to the rule that only domestic farm animals are included under the 'livestock' exemption exists in the case of race horses. Although horses raised solely for the purpose of racing do not appear to be farm animals in the strict sense of that phrase, they are exempted. **However, this exemption is limited to race horses raised on a farm, and activities such as the care and training of race horses done in connection with other commercial activities, such as a race track, are not considered exempt**."

---

[2] Additionally, work that is tied to "a separate and distinct business activity" is not to the anterior work of agriculture. *Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 407 (1996), citing *Imco Poultry*, 202 N.L.R.B. 259, 261 (N.L.R.B. March 7, 1973). As noted, in the present case, Plaintiff is tasked with activities derived for training and caring horses for Polo matches, not raising or breeding done at a separate facility.

*Beck v. Southern Rabbit Corp.*, 248 F.Supp. 1005, 1007 (N.D. Georgia 1966), citing 29

C.F.R. 280.131 (1961) (emphasis added).

Anticipating this analogy, Defendants turn to 29 C.F.R. 780.122:

> Employees engaged in the breeding, raising, and
> training of horses on farms for racing purposes are
> considered agricultural employees. Included are such
> employees as grooms, attendants, exercise boys, and
> watchmen **employed at the breeding or training farm.**
> On the other hand, employees engaged in the racing,
> training, and care of horses and other activities performed
> off the farm in connection with commercial racing are not
> employed in agriculture. For this purpose, a training tack at
> a racetrack is not a farm. Where a farmer is engaged in both
> the raising and commercial raising of race horses, the
> activities performed off the farm by his employees as an
> incident to racing, such as the training and care of the
> horses, are not practices performed by the farmer in his
> capacity as a farmer or breeder as an incident to his raising
> operations. Employees1.00 engaged in the feeding, care,
> and training of horses which have been used in commercial
> racing **and returned to a breeding or training farm for**
> **such care pending entry in subsequent races are**
> **employed in agriculture.**

29 C.F.R. 780.122 (emphasis added).

Defendants describe Halo Polo's operations and the equine industry in general as

an exempted operation apart from non-exempt race horse activities, by claiming how

polo activities described previously fall into the exempted category comparable to race

horses. However, Defendants fail to properly describe Halo Polo LLC's operations for

what they really are: a bifurcated system that includes non-exempt activity more

comparable to 29 C.F.R. 780.122 than Defendants would like to believe. Defendants also

fail to address the narrow interpretation of FLSA exemptions and that impact on the

agricultural exemption for this case.

As Defendants allege in their motion and statement of facts, Halo Polo operates 2 sets of locations: two in Wellington, FL (one in which Plaintiff works) and two in Ocala, FL. Defendants' Statement of Facts at ¶7 and 11. As stated above, the horses Plaintiff worked with do not come to him from the Ocala farms until they're raised and ready for polo games at several years old. Plaintiff's Statement of Facts at ¶12-13. The polo fields where Halo Polo's horses play are located mostly in Wellington, FL. Defendants' Statement of Facts at ¶20. Games during the high season ran 1-2 times a week and during the off season 2-3 times a week. Plaintiff's Statement of Facts at ¶35. When horses weren't playing polo, the horses were sent back to live in Ocala. Defendants' Statement of Claim at ¶8.

It's obvious, therefore, that Defendants operated their business in manner inconsistent with the exemption' application under 29 C.F.R. 780.122: the Ocala farms were used to breed and raise horses in the exempt manner described in the C.F.R. provision, while the Wellington locations where Plaintiff worked acted as a holding location for the multiple, weekly polo games held there and the activities there were non-exempt activities in connection with polo games. *Supra* 29 C.F.R. 780.121. The Ocala farms are comparable to the  exempt breeding and raising farms of horse racing while the Wellington locations and polo fields are more comparable to the non-exempt racetrack activities of  29 C.F.R. 780.122. Since Plaintiff is not associated with the Ocala farms, but rather the polo activities of Wellington, Plaintiff's activities are not exempt.

Defendants further try to distance polo from horse racing by singling out the commercial component of horse racing. Defendants contend that since polo does not compete for a cash prize it must not be commercial in nature, and this makes the

comparison inapplicable to finding polo activities not exempt. Defendants' reading of "commercial" in the CFR is underdeveloped and vague. The promulgation does not limit or define "commercial" in 29 C.F.R. 780.122 to cash prizes. It does not state whether or not the commercial aspect is a monetary prize for the horse, or if it's being applied to the winnings from horse racing-related gambling to race patrons. The promulgation doesn't even provide if the commercial aspect doesn't apply to the sale of the race horse itself. *Id.* It should be noted that in the same paragraph where Defendants try to distance polo from horse racing due to a lack commercial activity, Defendants mention that Halo Polo leases and sells its polo horses. Defendants make no attempt to explain how there is no commercial activity involved in the leasing or selling of sport horses, be it polo or otherwise.

### 2.   SECONDARY AGRICULTURE

Defendants then try to claim that Plaintiff's job is second agriculture under the FLSA. The secondary meaning of agriculture under the FLSA includes "any practices… performed by a farmer or on a farm as incident to or in conjunction with such farming operations." 29 U.S.C. 203(f). Defendants argue that the functions of Halo Polo LLC itself are that of a farmer and since Plaintiff is an employee of Halo Polo LLC then Plaintiff, too, must be a farmer, citing 29 C.F.R. 780.132. The promulgation, however, is not that absolute as it also states that "[o]ne who merely performs services or supplies materials for farmers in return for compensation in money or farm products is not a 'farmer.'" 29 C.F.R. 780.132. It's apparent, therefore, that the employee's activities and their relation to the farmer's agricultural activities must be more closely related than simply being an employee of a farmer.

> Agriculture, within the meaning of the Act, has two distinct branches: "(1) a primary meaning which includes farming in all its branches, such as cultivation and tillage of soil, growing and harvesting of crops, and (2) a secondary meaning which includes other farm practices, but only if they are performed by a farmer or on a farm." *Hodgson v. Idaho Trout Processors* Co., 497 F.2d 58, 59 (9th Cir. 1974) (citing *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762-63, 93 L. Ed. 1672, 69 S. Ct. 1274 (1949)). The secondary practices must be performed "incidentally to or in conjunction with such farming operations." *Farmers Reservoir & Irrigation Co*., 337 U.S. at 763. Farming includes horticulture. 29 U.S.C. § 203(f).

*Ares v. Manuel Diaz Farms*, 318 F.3d 1054, 1056 (11th Cir. 2003). The code of federal regulations defining ""As an incident to or in conjunction with" the farming operations" states "Generally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and **does not amount to an independent business**." [Emphasis added]. 29 C.F.R. 780.144.

As stated above, Defendants' business operations were bifurcated: the Ocala facilities breed and raised horses and took care of horses when they were not involved in polo while the Wellington facilities were involved in actually training and facilitating polo games and matches. Polo is not an established part of agriculture, is it not subordinate to the breeding and raising duties of the Ocala location, and the actual training and playing of polo matches is tantamount to a business independent of the breeding and raising aspect of Halo Polo's operations. As such, Plaintiff's work at the Wellington facility cannot be said to be performed in connection with farming operations.

The Seventh Circuit dealt with a case of work performed by employees on a farm in *Adkins v. Mid-America Growers, Inc*., 167 F.3d 355 (7th Cir. 1999).

> Mid-American's president has his home on the property on which the greenhouse is located, and one of the plaintiffs, Ortiz, was assigned to mow the president's lawn and do other gardening-type activities around the house. This clearly was nonexempt activity, and because Ortiz worked overtime he is entitled to damages. It is true that an incidental effect of mowing the president's lawn was to reduce the insect population, which might endanger the plants if some of the insects strayed into the greenhouse. **But the primary purpose was to make the president's home attractive; pest control was secondary. A nonagricultural activity that would be undertaken even if the actor weren't engaged in agriculture is not secondary agriculture; its cost is not incurred because of agriculture. [Emphasis added].**

*Adkins v. Mid-America Growers, Inc*., 167 F.3d 355, 359 (7th Cir. 1999).

"No matter how closely related it may be to farming operations, **a practice performed neither by a farmer nor on a farm** is not within the scope of the "secondary" meaning of "agriculture."" 29 C.F.R. 780.129. (emphasis added) "If a practice is not performed by a farmer, it must, among other things, be performed "on a farm" to come within the secondary meaning of "agriculture" in section 3(f). Any practice which cannot be performed on a farm, such as "delivery to market," is necessarily excluded, therefore, when performed by someone other than a farmer" 29 C.F.R. 780.134.

> Thus, employees employed by commission brokers in the typical activities conducted at their establishments, warehouse employees at the typical tobacco warehouses, shop employees of an employer engaged in the business of servicing machinery and equipment for farmers, plant employees of a company dealing in eggs or poultry produced by others, employees of an irrigation company engaged in the general distribution of water to farmers, and

other employees similarly situated do not generally come
within the secondary meaning of "agriculture."

29 C.F.R. 780.129.

None of Plaintiff's job duties were incidental or in conjunction with Halo Polo

LLC's farming operations. When a horse was in Ocala, it was being raised, fattened, fed,

and cared for in conjunction with Halo Polo's farming operations. But when a horse was

sent to Wellington, it was there to play sport, not to be raised or fattened; any feeding or

care for the horse was incidental to the playing and performance of a sport rather than the

activities of a farmer under 29 U.S.C. 203(f). When the Plaintiff is transporting the horses

via truck and trailer, he's not doing so to send the horses to market or storage, nor is he

doing as part of raising or breeding livestock; the Plaintiff is transporting the horses so

they can participate in organized, competitive sports. When Plaintiff exercised or trained

a horse, it was in relation to the horse's polo game which occurred several times weekly

right there in Wellington. The actual activities contemplated by 29 USC 203(f) occurred

at Halo Polo's Ocala farm, whereas the activities in Wellington were non-exempt

activities more akin to horses at a race track.

As such, Defendants are not entitled to the agricultural exemption as Plaintiff's

activities are more comparable to that of non-exempt activities rather than the typical

farm activities contemplated by 29 U.S.C. 203(f).

## C.  THE AFFIRMATIVE DEFENSE OF COST CREDIT HAS BEEN WAIVED AND DOES NOT APPLY.

Defendants then move to state that both Plaintiff's Federal and Florida Minimum

Wage claims are not supported by Fact or Law. The basis for their argument is the cost

credit defense under the FLSA.

> Where payments are made to employees in the form of goods or facilities which are regarded as part of wages, the reasonable cost to the employer or the fair value of such goods or of furnishing such facilities must be included in the regular rate…. Where, for example, an employer furnishes lodging to his employees in addition to cash wages the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined.

29 C.F.R. 718.116.

However, Defendants are not entitled to the defense as the defense was never pled and was therefore waived. None of the affirmative defenses listed in Defendants' Answer and Affirmative Defenses at [DE 12] list the cost credit defense. In an Eleventh Circuit decision, the Court reversed the district court for allowing Defendants to amend their pleadings to assert an affirmative defense at trial. *Diaz v. Jaguar Rest. Group, LLC*, 627 F.3d 1212 (11th Cir. Fla. Dec. 13, 2010). *See also, Donahay v. Palm Beach Tours & Transportation*, 243 F.R.D. 697 (S.D. Fla. 2007) (defendants sought to amend answer and affirmative defenses seeking a declaration that would trigger the Motor Carrier Act, and this Court found that simply failing to timely plead is not good cause). See also *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir.2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense."). See also *Fla. Health Scis. Ctr., Inc. v. Humana Med. Plan, Inc.*, 190 F. Supp. 2d 1297, 1304 (M.D. Fla. 2001) ("Failure to plead an affirmative defense generally results in the waiver of the defense. An affirmative defense must be pleaded in the answer in order to give the opposing party sufficient notice of the defense and the ability to gather proper evidence and develop arguments to refute the defense."). See also Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense".) In the

instant matter, Defendants never moved to amend, and thus waived any specific cost credit defenses as they were never pled as affirmative defenses. Nor has Plaintiff given implied or express consent to the issue. *Diaz*, 627 F.3d at 1214, citing Fed. R. Civ. P. 15(b).

The United States District Court for the District of South Carolina, Charleston Division, was faced with a factual similar issue in *Rotondo et al. v. Cite of Georgetown*, 869 F. Supp. 369 (Dist. S.C. 1994). In *Rotondo*, Defendants elected to assert the affirmative Defenses of the executive and/or administrative exemption for the first time on their motion for summary judgment. The Court in response stated:

> In its Motion for Summary Judgment, Defendant raises for the first time the defense that Plaintiffs Anderson, Johnson, Pack, and Ward are exempt from the overtime provisions of the FLSA as executive and/or administrative employees as defined by 29 C.F.R. § 541. **The assertion of an exemption from the mandates of the FLSA is an affirmative defense that must be specifically pleaded by an employer or it is waived**. *Renfro v. City of Emporia*, 741 F. Supp. 887, 888 (D. Kan. 1990), aff'd, 948 F.2d 1529, 1539 (10th Cir. 1991). Therefore, because Defendant had not specifically pleaded this affirmative defense for Plaintiffs Anderson, Johnson, Pack, and Ward prior to its Motion for Summary Judgment, **this court finds that Defendant has waived this defense**. [Emphasis added].

Id at 374. *See also, Wright v. AARGO Security Services, Inc.*, 2001 U.S. Dist. LEXIS 882, *6 (S.D. NY 2001). Analogously, in *Day v. Liberty National Life Insurance Company*, 122 F.3d 1012, 1015 (11th Cir. 1997), the Eleventh Circuit found the statute of limitations defense to be waived if not pled. ("The statute of limitations is an affirmative defense which must be specifically pled. Fed.R.Civ.P. 8(c)."). As Defendants have failed to assert the affirmative defense for a cost credit, said affirmative defense has been waived, see *Diaz*, 627 F.3d at 1215.

Defendants will contend, however, that they did plead the Affirmative Defense. Namely, Defendants will cite to their Fifth Affirmative Defense ("[a]t all times material, Plaintiff's wages exceeded Federal minimum wage and thus he is not entitled to relief under the FLSA.") and their Sixth Affirmative Defense ("[a]t all times material, Plaintiff's wages exceed Florida minimum wage and thus is he is not entitled to relief under the Florida Minimum Wage Act."). [DE 12]. Defendants cannot rely on such grossly vague pleadings to allege the Cost Credit Affirmative Defense was pled. Nothing about the pleading puts Plaintiff on notice regarding the Cost Credit Defense, and Defendants do not cite the Affirmative Defense specifically until the filing of their Motion for Summary Judgment. As such, this part of Defendants' motion is improper and should be denied outright as procedurally deficient.

Even if Defendants did properly plead the Affirmative Defense- which Plaintiff maintains they did not- Defendants still are not entitled to the cost credit as to the Federal and Florida Minimum Wage claims.

"When calculating the amount of back wages due to an employee under the FLSA, therefore, the employer is entitled to a credit for the reasonable cost of providing the meals and lodging…. The regulations require employers to keep certain records of the costs incurred in furnishing board, lodging or other facilities, 29 C.F.R. 516.27(a), and also require the employer to maintain records showing additions or deductions from wages paid for board, lodging or other facilities on a work week basis. 29 C.F.R. 516.28(b)."  *Quoting*, *Donovan v. The New Floridian Hotel, Inc*., 676 F.2d 468, 473-74 (11th Cir. 1982).

> Moreover, regarding an employer seeking a cost credit, it is provided that "the Secretary is authorized to determine the fair value of such board, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used in lieu of actual measure of cost in determining the wage paid to any employee. In determining the wage of a tipped employee, the amount paid such employee by his employer

> shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee."

*Quoting, Donovan*, 676 F.2d at 464.

The employer has the burden of showing entitlement to the credits claimed under the FLSA and the district court should appropriately place the burden of proving the reasonable cost of providing board, lodging, or other facilities on the employer.  In *Marshall v. DeBord, Lab.Cas*. P 33,721 (E.D.Okl.1978), the court ruled that the employer has the burden of showing that he has satisfied the conditions imposed by the FLSA and regulations in order to be entitled to a credit for the reasonable cost of meals and lodging provided to employees. Finding that the defendant in that case had not produced records or other evidence to establish the reasonable cost (not including profit) of providing the board, lodging, or other facilities which he customarily furnished to employees, the court denied any credit against back wages due. Similarly, in *Morgan v. Atlantic Coastline R. Co*., 32 F. Supp. 617 (S.D.Ga.1940) the court did not allow the employer to include the value of housing facilities provided to employees as wages paid for purposes of the FLSA, because the employer had not requested the Administrator of the Wage and Hour Division, United States Department of Labor, to determine the reasonable cost of providing those facilities. *Id*. at 619.  The court noted that there was no evidence to show the reasonable or actual cost of any facility which employers claimed they had furnished to the employees. *Id.*"   *Quoting Donovan,* 676 F.2d at 474.

In *Donovan* , the Eleventh Circuit ruled that "[i]n this case, the appellants have failed to prove the reasonable cost of the meals and lodging which they claim was

furnished to employees. The appellants have not kept the records required by 29 C.F.R. §
516.27 with respect to the cost of providing the meals and lodging in question of with
respect to the actual deductions claimed on a week-by-week basis. The Administrator of
the Wage and Hour Division made no determination of reasonable cost in this case, nor
does the record reflect any request by the appellants for such a determination…. an
employer's unsubstantiated estimate of his cost, where the employer has failed to comply
with the recordkeeping provisions of the FLSA, and where there has been no
determination of reasonable cost by the Wage and Hour Division, does not satisfy the
employer's burden of proving reasonable cost." *Id.* at 475.

  In the case at hand, Defendants have produced nothing more than an affidavit by
Defendant Melissa Ganzi as to the value of the accommodations provided to Plaintiff.
See the Declaration of Melissa Ganzi, previously filed as [DE 25-5]. Defendants have not
produced any records as to the costs or deductions related to the housing, nor have
Defendants produced evidence of any determination by the Administrator of the Wage
and Hour Division of the United States Department of Labor regarding the reasonable or
actual cost of the furnished facility. In addition, such costs were never discussed with
Plaintiff nor did he understand that they were included and further it was told to Plaintiff
that it was a requirement that Plaintiff live on the premises. Plaintiff's Statement of Facts
at ¶22, 27, 31-33. In fact, Defendant Melissa Ganzi's Affidavit is contradicted by the
Defendant's own Deposition Testimony: when asked about the rental value of Plaintiff's
accommodations at her deposition, Defendant Melissa Ganzi could not answer what the
value of the rent would be because Plaintiff was already there when the barn was
purchased and always lived there. *Id.* at ¶22. Prior to the initiation of this lawsuit and all

the way up to her Deposition a scant 2 months ago, Defendant Melissa Ganzi had made no determination as to the value of Plaintiff's housing for the relevant time period of his work for her; it is only now at summary judgment that Defendants have provided a calculation as to its value.

Furthermore, in *Marshall v. New Floridian Hotel, Inc*., 1979 U.S. Dist. LEXIS 10122, 28-30 (S.D. Fla. Aug. 29, 1979), the district court held that an employer cannot claim a credit where he fails to offer an employee the option of receiving cash instead of the credit the employer intends to assert for meals, lodging and other facilities as acceptance of said meals, lodging and other facilities cannot be considered voluntary and uncoerced.

> (B) Defendants have failed to provide their employees with an option to receive in cash the amounts attributed and claimed as a credit by defendants for meals, lodging or other facilities prior to the employees' acceptance thereof and prior to deductions being taken or claimed by defendants from the wages paid such employees. Absent the aforesaid option, an employee's acceptance of such meals, lodging or other facilities is not voluntary and uncoerced and thus such may not be considered "furnished" under Section 3(m) of the Act as part of wages paid the employee in accordance with 29 CFR 531.30.

In the case at hand, Defendants failed to produce any evidence that there was an agreement that the lodging would ever be considered as part of the wages paid to Plaintiff. This was only contemplated by Defendants *post facto* after they had been sued for the non-payment of minimum and overtime wages, as is evident from Defendant Melissa Ganzi's deposition testimony. In fact, as noted above Plaintiff was told the usage of the apartment was mandatory and was not aware it was part of his compensation.

Therefore, Defendants have failed to produce any evidence regarding an agreement with Plaintiff that the facilities provided to Plaintiff would ever be considered as part of his wages. As Defendants have failed to produce any evidence that they offered Plaintiff the opportunity to receive the cash for the value of the apartment instead of the apartment, the usage of said apartment by Plaintiff cannot be considered voluntary and uncoerced.

Defendants' cost credit defenses as to both the Federal and Florida Minimum Wage claims should be denied because they are both procedurally deficient and Defendants as a matter of law cannot claim them.

WHEREFORE, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OUGHT TO BE DENIED IN ITS ENTIRETY FOR THE REASONS STATED.

**Respectfully submitted,**

**CHRISTOPHER COCHRAN, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: CNC02G@GMAIL.COM**
**F.B.N. 0084088**
**BY:____/s/ Christopher Cochran_____**
**CHRISTOPHER COCHRAN, ESQ.**

<u>**CERTIFICATE OF SERVICE**</u>:

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED SUBSEQUENT TO E-FILING TO:**

**DANIEL S. ROSENBAUM**
**ROSENBAUM MOLLENGARDEN PLLC**
**SUITE 500**
**250 AUSTRALIAN AVENUE**
**ONE CLEARLAKE CENTER**
**WEST PALM BEACH, FL 33401**
**561-653-2900**
**FAX: 561-820-2542**
**EMAIL: DROSENBAUM@R-MLAW.COM**

**TATIANA B. YAQUES**
**ROSENBAUM MOLLENGARDEN PLLC**
**SUITE 500**
**250 SOUTH AUSTRALIAN AVENUE**
**5TH FLOOR**
**WEST PALM BEACH, FL 33401**
**561-653-2900**
**FAX: 561-820-2542**
**EMAIL: TYAQUES@R-MLAW.COM**

**BY:____/s/ Christopher Cochran_____**
**CHRISTOPHER COCHRAN, ESQ.**